## SEARS, next friend of BAKER, v. THE STATE.

1. When a practicing physician has made an affidavit that a person who has been convicted in a superior court of this State for the crime of murder, and has been sentenced by the judge of that court to be hanged, has been by affiant examined since the sentence and conviction, and discovered to be, at the time of the examination and of making his affidavit, insane and in such mental condition that the question of his sanity should be tried before a jury under the terms of the law, and when this affidavit has been duly presented to the judge for the purpose of procuring a trial on the question of the sanity of such a convict by the superior court of the county in which he has been sentenced, it is the imperative duty of the judge to order such trial, and to have a jury empanelled, as provided by the statute, for the determination of this question.

2. The fact that after this conviction and sentence of the accused a motion for a new trial was made in his behalf before the judge of the superior court, on the ground that he was insane at the time of the alleged commission of the

crime and at the time of his trial, and that the judge overruled this motion after a hearing on the same, which judgment was affirmed by this court, does not operate as an estoppel or bar to a proceeding afterwards instituted in behalf of the convict for a trial before a jury on the question of his insanity under the provisions of the act of the General Assembly approved December 21, 1897 (Acts of 1897, pp. 41-43).

3. The affidavits of the physicians in the present case were a compliance with the principles of law above specified ; and the judge below, therefore, erred in refusing to grant the convict a trial before a jury on the question of his sanity.

LUMPKIN, P. J., and FISH, J., dissenting.   1. There can be no lawful inquisition under section 1047 of the Penal Code, as amended by the act of December 21, 1897, into the mental condition of a convict who has been "sentenced to the punishment of death," except upon a petition to the superior court.

2. Such a petition is fatally defective unless it affirmatively alleges that the convict became insane after having been so sentenced.

Argued November 20, — Decided December 8, 1900.

Petition for inquisition as to sanity.   Before Judge Candler. Fulton superior court.   September 8, 1900.

*King & Anderson, Lewis W. Thomas,* and *Lee J. Langley,* for plaintiff in error.   *J. M. Terrell, attorney-general,* and *C. D. Hill, solicitor-general,* contra.

LEWIS, J.   It appears from the record that on April 17, 1900, James L. Baker was indicted by the grand jury of Fulton county for the murder of his wife, alleged to have occurred on the 13th of that month, and that on April 19, 1900, he was tried, convicted, and sentenced to be hanged for the crime.   No plea of insanity was filed on the trial.   A new trial was moved for in Baker's behalf, and one of the grounds of the motion was that Baker was insane at the time he did the killing.   Evidence was presented pro and con upon this question, and the trial judge overruled the motion.   A writ of error was taken to this court, and the judgment overruling the motion was here affirmed.   *Baker v. State,* 111 *Ga.* 141.   After this, Mrs. M. J. Sears, as the next friend of James L. Baker, on September 4, 1900, presented to Hon. John S. Candler, judge of the superior courts of the Stone Mountain circuit, presiding in the criminal branch of Fulton superior court, her petition alleging that James L. Baker is insane, "and the condition of his mind is such that the sentence of the court, to wit, that he should be hanged, ought not to be carried into effect."   To the petition was attached the affidavit of Dr. W. M. Curtis, who made oath that he was a practicing physician of Atlanta, Ga., that he had seen and examined Baker,

and that in his opinion Baker was at that time of unsound mind, and in such mental condition that the question of his sanity should be tried before a jury under the terms of the law. This petition was amended by adding thereto the affidavit of Dr. Marion Hull, also a practicing physician of ·Atlanta, Ga., who made oath that since the trial, conviction, and sentence of Baker in the superior court of Fulton county for the offense of murder, he had examined said Baker, and that he (Baker) was, at the time of making said affidavit (September 4, 1900), an insane person. Affiant further swore that he was a practicing physician of Atlanta, Ga., and that because of the unsoundness of mind of Baker he should be tried upon the question of sanity before a jury. Mrs. Sears verified her petition under oath, and stated that she was the aunt of Baker. The petition prayed for an order directing a trial before a jury upon the question of sanity or insanity of Baker, and for all other proceedings that may be necessary or proper to determine the matter in accordance with the provisions of the statute in such cases. After considering the matter presented by the petition, amendment, and affidavits in support thereof, the judge below, on September 8, 1900, passed an order overruling the petition, and refusing to grant the trial asked for. Upon this judgment of the court petitioner specifically assigns error in her bill of exceptions.

1. This proceeding was instituted under the provisions of the act approved December 21, 1897 (Acts 1897, pp. 41–43). It will be noted from the first section of that act that it amends section 1047 of the Penal Code by striking therefrom in the third line the clause, "the sheriff of the county, with the concurrence and assistance of the ordinary thereof, shall summon a jury of twelve men to inquire into such sanity," and in lieu thereof inserts the following clause: "Upon the oath of a practicing physician the question of sanity of said convict shall be tried by the superior court of the county in which he has been sentenced, and he shall be entitled to a jury of twenty-four men, from which the State shall be entitled to six peremptory strikes, and the convict to be entitled to six peremptory strikes, said jury to be regularly drawn from the jury box of said superior court." Section 5 of the act prescribes that said section of the code when amended shall read as follows: "If, after any convict shall have been sentenced to the punishment of death, he shall become insane, upon the oath of a practicing physi-

cian the question of the sanity of said convict shall be tried by the superior court of the county in which he has been sentenced, and he shall be entitled to a jury of twenty-four men, from which the State shall be entitled to six peremptory strikes, and the convict to be entitled to six peremptory strikes, said jury to be regularly drawn from the jury box of said superior court." That section further prescribes the oath to be administered to the jury, and that if the jury find the convict insane, the sheriff shall suspend execution of the sentence, and the presiding judge of the circuit shall cause the same to be entered on the minutes of the superior court of the county where the conviction was had. It further provides that the presiding judge shall charge the jury on the question submitted, as in other cases, and if the jury shall find the convict sane he shall be entitled to have no other trial as to his insanity upon any new application for a trial thereof.

The judge of the court below, in his order refusing the prayer of the petition, seems to rely mainly upon the fact that neither of the affidavits of the two physicians, which were attached to the petition, nor the petition itself charged that this alleged insanity arose after the conviction and sentence of Baker; and that no effort whatever was made to show that Baker had become insane since his trial, conviction, and sentence. It is a fact, we think, worthy of notice in this connection, that it does not appear from the record before us that the State's counsel, or any one in behalf of the State, presented any demurrer to the petition or affidavits. The solicitor-general in his brief says: "If the affidavit of the physician, in this case, is a compliance with the requirements of the act of 1897, it seems to me that the sanity of James L. Baker should be submitted to and passed upon by a jury. While the affidavits do not say that Baker has become insane since his trial and conviction, they do say that he is now insane, and there having been no plea of insanity on his trial for murder, the law presuming every man to be of sound mind, if he is now insane, it follows as a corollary that he must have become insane since his conviction." The above seems to furnish a very potent reason why the solicitor-general did not see fit to demur to the sufficiency of the affidavits. The truth is, the argument strikes us as being unanswerable. Even if the act requires that the physician's affidavit on its face should show that the convict had become insane after his sentence, this is the logical and

legal conclusion necessarily deducible from the facts stated in the affidavits of the two physicians in the present case. A verdict of guilty and sentence of the court thereon establishes beyond doubt, from a legal point of view, that the accused was sane when the crime was committed, and at the time of his trial and sentence. The two physicians swore positively to his insane condition at the time their oaths were made, which was after this sentence. They further swore that he is a fit subject to have the question of his sanity or insanity tested before a jury according to the statute in such cases made and provided; and it necessarily follows that he must have become insane since his conviction and sentence. We do not think, upon an examination of the act in question, that it by any means necessarily follows that the legislature did not intend that the judge should pay any respect to the affidavit of a physician unless he positively swore the convict became insane after his sentence. We think it is entirely consistent for the judge to act upon the testimony of a physician who may never have had any acquaintance with the convict prior to his conviction, and the very fact of the physician swearing that Baker was insane at a time since the sentence is certainly sufficient for the judge to infer that the oath means that he became insane since his trial, and there is enough in such an oath to at least have the investigation made by jury trial as prescribed by the statute. Nowhere in the act, from beginning to end, does it appear that any petition was contemplated, and hence nothing is said with reference to what such a petition should allege. We do not mean to say that a next friend of an alleged insane convict would not have the right to present affidavits of physicians showing insanity after sentence, and also file, in the interest of the convict, a petition praying for the trial of his sanity or insanity before a jury. As the act, however, makes no provision about a petition, and does not seem to contemplate such a proceeding, but does require the physician's affidavit, without undertaking to prescribe any particular form for such an affidavit, we think the judge should be governed by its contents, regardless of any informalities that might appear in the petition by next friend, even if any should exist in this case; and when the affidavits are sufficient, as in the present instance, we do not think the law leaves it discretionary with the judge as to whether he shall give the convict a trial before the jury on the issue of his sanity or insanity. The act itself

does not seem to leave but one thing discretionary with the judge, and that is the right to appoint a special term for such a trial. We enter into no discussion or decision on the sufficiency of the petition filed by the next friend of the convict. Under the statute, what the judge has to look to are the affidavits of these practicing physicians; and they would have been as effective in law, if they had been presented by this next friend, or any other person in behalf of the convict, without being accompanied by a written petition.

2. The judge further says, in his order refusing to grant the prayer of the petition, that even if the allegations in the petition and the affidavits were sufficient, the defendant, in his motion for a new trial, having insisted upon his insanity previous to the commission of the act and at its commission, should now be estopped from claiming that he has become insane since the conviction. The trial to which the judge refers is the motion for a new trial the accused made after his conviction above mentioned. That was an entirely different proceeding from the one at present instituted. There does not seem to have been any attempt at all in that motion to go into an investigation as to whether insanity had developed in the mind of this convict after his conviction. In fact that would not have been a proper ground in a motion for a new trial; for where the insanity overcomes the accused after the termination of his trial and sentence thereunder, the act of 1897, above cited, provides that the issue shall be tried before a jury, and how it shall be tried.

3. We think the affidavits in this case are sufficient to require the judge to grant the prayer of this petition, and to summon a jury for the purpose of trying the question as to whether the accused has become insane since his conviction and sentence. His judgment, therefore, dismissing the petition, should be reversed.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Fish, J., who dissent.*

LUMPKIN, P. J. It is certain that, in ordering the issuance of a writ of mandamus absolute, requiring the judge below to certify the bill of exceptions, this court did not pass upon, or intend to pass upon, the questions therein raised. It was simply decided that the bill of exceptions should come to this court duly verified, in order that the assignments of error might be taken up and dealt with in the regular way. See *Sears* v. *Candler*, reported supra. This being so, the case was, when it did reach here, open for con-

sideration and determination upon its merits; and being unable to concur in the correctness of the conclusions announced by the majority, I will, as briefly as I can, state my reasons for dissenting.

1. It is a fundamental principle of pleading and practice that he who seeks to set in motion the powers of any court of record for the purpose of obtaining relief of any kind must present a suitable motion or a proper petition, or else proceed as some particular statute may provide. The act of 1897 (Acts of 1897, p. 41), amending section 1047 of the Penal Code, gives a remedy in the cases for which it provides. It does not in terms declare that there must be a petition, but this does not, I think, afford any ground whatever for holding that this essential thing may be dispensed with. The legislative grant of authority to administer the specified relief implies, necessarily, that the party seeking it must do so in the right way; and as no other way is expressly pointed out, the only proper way is by petition to the court. It could not, I am sure, have been intended that the "practicing physician" whose oath is to be the foundation of the proceeding is to be regarded as a party thereto, or that the mere making of the oath would place him in the attitude of appearing as the next friend of the convict. Certainly the statute does not so declare. Indeed, the physician figures mainly as a preliminary witness. The proceeding for which the law as amended provides is a case in the superior court. This court so held when it directed the judge to certify the bill of exceptions. It could not have held otherwise without deciding that an inquisition under this law was not a judicial proceeding. I fully acquiesce in all that was laid down in disposing of the application for mandamus, but it is to my mind inconceivable how a case like the present could lawfully originate in the superior court without a petition for its foundation. The holding of the majority, that a mere affidavit, sworn to by one who need not even profess to be interested, either as next friend of the convict or as a citizen, in the matter to which it relates, and who is not required to pray for anything and in point of fact does not, is sufficient to set in motion the powers of the superior court and be made the basis of a judicial investigation, is, I earnestly but with the utmost respect submit, an unwarranted innovation upon the established rules of pleading and practice. But I do not rest my dissent to the judgment rendered in this case solely upon the position just stated, for I think the

very statute under consideration shows upon its face that a petition to the court is essential. It declares that the convict, if found sane, "shall be entitled to have no other trial as to his insanity upon any new application for a trial thereof." The word "application," as here used, is synonymous with "petition." In forbidding a "new" application, reference must have been intended to an original application, for there could not be a new one if there had not been an old one. A mere affidavit is no application at all, and there is not a hint in the law that the affidavit therein mentioned should be so regarded. For the reasons above stated, and others which will suggest themselves, I am fully satisfied that a petition to the superior court is an indispensable prerequisite to the holding of such an inquisition as that under consideration.

2. It will not, of course, be denied that if a petition is necessary, it must, to be meritorious, make a case within the statute. Did the allegations of the petition with which we are now dealing meet this requirement? I am convinced that in at least one vitally essential respect it entirely failed to do so. It was not presented to the judge until after the imposition of the death sentence, and did not allege that Baker, the convict, became insane after sentence. It merely stated that he "is an insane person, and the condition of his mind is such that the sentence of the court, to wit, that he should be hanged, ought not to be carried into effect." The verb "is," as used in the petition, plainly referred to the time when the petition was signed by the attorneys for Mrs. Sears. The physicians' affidavits are to the same effect as the petition with regard to this matter, i. e., they relate only to the mental condition of Baker at the time they were made, which was after the sentence, and do not state that he became insane after he was sentenced. The original section of the code dealt exclusively with convicts who became insane after having been sentenced to the punishment of death. The section as amended deals with this same class and no other. It begins: "If, after any convict shall have been sentenced to the punishment of death, he shall become insane, upon the oath of a practicing physician the question of the sanity of said convict shall be tried by the superior court of the county in which he has been sentenced." When, in preparing the opinion of this court in *Carr's* case, 98 *Ga.* 89, I ventured to suggest a need of legislation with respect to inquisitions of this character, I used the following language: "If, in the

wisdom of the General Assembly, it is deemed advisable that there should be a judicial investigation as to the mental condition of one who has been legally convicted and sentenced to death, and who is alleged to have subsequently become insane, proper provision should be made for holding and conducting such an investigation under legal rules and with appropriate procedure." See pp. 91–92. The words, " and who is *alleged to have subsequently become insane,*" were used deliberately and advisedly. If the General Assembly, as is probable, acted upon the suggestion made in that case, it is reasonable to presume that it had in mind the idea embraced in the language last quoted, and it is undoubtedly true that nothing in the act of 1897 runs counter thereto. On the contrary, the entire act seems to have been based upon that very idea, and it is in every particular consistent therewith.

A verdict of guilty and sentence of death, unless set aside, conclude the convict finally upon two propositions, i. e., (1) that he was sane when the act was committed, and (2) that he was sane at the trial. This is so whether the defense of insanity was made at the trial or not; and irrespective of whether insanity was set up in a ground of a motion for a new trial based on newly discovered evidence. From these premises the majority conclude that an affidavit of a physician (which they treat as the equivalent of a petition), made after sentence, that the convict " is now " insane, necessarily means that he became so after the sentence was imposed. To this I am unable to agree. If a petition or affidavit averring only a present state of insanity, with no reference to the time it originated, means what my brethren assert it does, why could not the petitioner or the affiant say so in plain terms? It will be readily seen that the ruling of the majority forces one to read into the petition or affidavits now before us something that a conscientious next friend or physician might not have been willing to allege or depose. Alleging or swearing that a man is to-day insane is not alleging or swearing anything as to when he became so. The General Assembly must have known as well as we what was concluded by the verdict and sentence in a criminal case, and therefore must have legislated upon the theory that if at any time a convict under sentence of death should be found to be insane, it was to be absolutely assumed that he became so after sentence. Accordingly, it did not, in passing the act of 1897, undertake to provide for any

other contingency. In order, then, to bring a case within the act, the pleadings must affirmatively aver that the alleged insanity arose after sentence. An erroneous process of reasoning resulting in a like conclusion that a particular averment must necessarily mean so and so, when it plainly does not, will not dispense with what the law, as I understand it, requires shall be alleged fully and unequivocally.

I also think the petition should set forth the fact that the requisite affidavit by a practicing physician has been made. It would be good practice, perhaps indispensably necessary, to attach a copy of it as an exhibit.

In reply to the suggestion that it would be a hardship to require that the physician's affidavit must aver positively that the insanity arose after sentence, for the reason that it might be difficult or impossible to find a physician who could so depose, the reply is that the law so demands, and the hardship, if it exists at all, is simply that of an unfortunate person who can not get the needed proof. Again, this suggestion is hardly consistent with the view that an affidavit like either of those now before us meets the legal requirement on the idea that it really means the insanity did not arise till after sentence; for, as remarked above, if it does so mean and the affiant so understands it (which ought to be so if it is to be given that interpretation), he would willingly say in plain English the insanity did arise after sentence, and there would not be so much difficulty in finding a physician ready to make the requisite oath. Moreover, such a hardship will rarely arise where a sane convict actually becomes insane after sentence, and I verily believe it is the purpose of the law to cut off investigation into alleged insanity which has to be traced back to a date prior to the trial or the commission of the crime. The effect of the ruling of the majority is to practically grant a new trial upon issues that are conclusively and forever settled by the verdict. If an insane man is unfortunately convicted of a capital offense and sentenced to die, and in his particular case either of the legal presumptions, viz., that he was sane when he did the act, or sane when he was tried, is in fact contrary to the real truth of the matter, the remedy is with the Governor.

FISH, J. I concur in the foregoing views expressed by the Presiding Justice.