## LEE <em>v.</em> THE STATE.

1. This case on its merits is controlled by the rulings made in <em>Sears</em> v. <em>State</em>, 112 <em>Ga.</em> 382.
2. When an inquisition of insanity has been ordered by a judge of the superior court under the provisions of the Penal Code, § 1047, as amended by the act of 1897, and at the time fixed for the inquisition to take place another judge appears to conduct it, it is competent for such judge to entertain a motion to dismiss the entire proceeding on the ground of the insufficiency of the affidavit tendered the first judge.    The granting of a hearing by the first judge is not a conclusive judgment that the affidavit complies with the law.

Argued March 16, — Decided April 8, 1903.

Inquisition of insanity.    Before Judge Roan.    Fulton superior court.    January 22, 1903.

<em>Arnold & Arnold,</em> for plaintiff in error.
<em>C. D. Hill, solicitor-general,</em> contra.

Cobb, J.    The facts disclosed by the present record are as follows:    Millard Lee was tried in the superior court of Fulton county, upon an indictment charging him with the offense of murder, and was convicted.    Before the time arrived for the sentence of the court to be carried into execution, an affidavit, of which the following is a copy, was presented to Judge Lumpkin of the Atlanta circuit:    "Personally came before the undersigned Robert W. Westmoreland, who on oath says that he is a practicing physician in the city of Atlanta, said State and county, regularly licensed, and has been such since 1875.    As a physician, deponent has seen and made careful physical examinations of Millard Lee, who is now under

sentence of death, said sentence to be executed on to-morrow, to-wit, December 23rd. Deponent has examined Lee before the former trials several months ago, and also again made a careful physical examination of said Millard Lee this day. Deponent says that said Millard Lee is not now of sound mind and memory, and that said Millard Lee is now insane. Said Millard Lee does not now know the difference between right and wrong. Said Millard Lee's reason is now dethroned, which prevents him from distinguishing right from wrong. Deponent does not believe, as a physician, that said Millard Lee, on account of the condition above described, can be legally executed under the laws of Georgia; and deponent makes this affidavit for the purpose of having said Lee's mental condition inquired into by a jury, under the laws of Georgia, as contained in section 1047 of the Code of Georgia of 1895, and the amendatory act thereof, on page 41 of the Acts of 1897 of the legislature of Georgia." Judge Lumpkin passed the following order: " Whereas Doctor Robert W. Westmoreland, a practicing physician of the county of Fulton, has made and filed an affidavit this day, in which he states that Millard Lee, now under sentence of death in said county, upon conviction of the crime of murder, is now insane; and whereas the same has been duly presented to the judge of the superior court of the Atlanta circuit: It is ordered that the trial of the question thus formed in regard to the sanity or insanity of said Millard Lee be, and it is, set for trial on January 12th, 1903, at the court-house in said county; and that such proceedings be had as are by law provided in such cases. And whereas said Millard Lee is sentenced to be executed on December 23rd, 1902, it is ordered that notice of this affidavit and order be given at once to his Excellency, the Governor of the State, so that he may take proper action as he may deem best in regard to a suspension of said sentence, to await the trial. Let the solicitor-general be notified hereof." The case came on to be heard before Judge Roan of the Stone Mountain circuit, presiding in Fulton superior court, and the solicitor-general filed a demurrer to the affidavit of Dr. Westmoreland, a copy of the grounds of such demurrer being as follows: " First: Because the said affidavit is not a petition to the superior court of said county for the purpose of having the question of sanity or insanity of the person under sentence of death for the crime of murder inquired into, the said affidavit not being a petition addressed

to the superior court of said county; and the subject-matter of said affidavit can not be inquired into except on petition filed in behalf of the said Millard Lee to said court, supported by an affidavit under section 1047 of the Penal Code, amended by the act of December 21st, 1897.    Second:    Because the said affidavit of the said Robert W. Westmoreland is fatally defective in that it fails to allege affirmatively that the said convict, Millard Lee, became insane after having been sentenced to death for the crime of murder by the superior court of said county."    The court sustained the demurrer and dismissed the proceeding, and to this ruling Lee excepted.

1. This case is, in our opinion, absolutely controlled by the rulings made in the case of *Sears* v. *State*, 112 *Ga.* 382.    The facts in that case and in the present case are substantially the same.    In each the accused was convicted of murder, and after sentence an affidavit of a practicing physician was made, stating that the accused was then insane.    In neither case did the affidavit state in terms that the accused had become insane after sentence.    In the *Sears* case it appeared that the physicians who made the affidavit had never seen the accused before he was sentenced.    In the present case it appears that the physician had examined the accused before he was convicted, but the affidavit does not contain any expression of opinion as to the mental condition of the accused at that time.    We can see no material difference between the two cases, and in our opinion neither of the grounds of the demurrer was well taken, and the court erred in sustaining the same and dismissing the proceeding.    If the present record had disclosed that the accused filed a plea at the trial that he was insane at that time, and this plea was found against him, and that on the trial, under the plea of not guilty, he introduced evidence to establish that he was insane at the time the crime was committed, the question presented would have been somewhat different from that determined in the *Sears* case.    Speaking for myself, however, I do not think this would have made any material difference.    The reasoning in the *Sears* case is founded upon the conclusiveness of the verdict of guilty as to the mental condition of the accused; and this was evidently the view entertained by the court in *Spann's* case, 47 *Ga.* 551.    The verdict is none the less conclusive on this point where the accused relies on insanity as a defense than where he does not. If the judgment is conclusive when there has been no investigation

of insanity prior to the verdict, it does seem that for a stronger reason it would be conclusive when there has been an investigation; and there is a solemn judgment of the court finding that the accused was sane.

2. It was contended that Judge Roan erred in entertaining the demurrer to the affidavit, because the order of Judge Lumpkin concluded the State from raising any objections to the affidavit. We can not concur in this view. The inquisition of insanity provided by the Penal Code, § 1047, as amended by the act of 1897 (Acts 1897, p. 41), is not to be had unless a proper affidavit has been made, and the judge presiding at the time the inquisition is to take place is not compelled to proceed simply because another judge may have improvidently set the matter for a hearing upon an insufficient affidavit. We do not think that Judge Roan erred in entertaining the demurrer, but we do think he erred in sustaining the same.

*Judgment reversed. Simmons, C. J., and Lamar, J., concur. Lumpkin, P. J., absent. Fish and Candler, JJ., dissent.*

CANDLER, J. I readily agree that Judge Roan did not err in entertaining the demurrer. I also recognize that the facts disclosed by this record are substantially the same as those in the case of *Sears* v. *State*, cited in the majority opinion. I deem it my duty, however, to go on record as dissenting from the doctrine laid down by the majority of this court in the *Sears* case, and consequently from the holding of the majority in the present case. The views of Presiding Justice Lumpkin and Mr. Justice Fish, as expressed in the dissenting opinion of the former in the *Sears* case, meet with my fullest approval. Very little can be added to the admirable argument there presented; and I will content myself with calling attention to some of the features of the case at bar, which seem to me to emphasize the force and correctness of the ideas expressed by the Presiding Justice. A proceeding of this sort is only quasi criminal in character. The guilt of the accused, and consequently his sanity both at the time of the commission of the crime and of his trial therefor, have been, in a legal sense, finally established. But humanity revolts at the idea of putting to death one whose mental condition is such that he can not comprehend why he is being punished; and therefore the law provides that if, *after conviction,* the convict *shall become* insane, the execution of the death sentence shall be suspended until he shall regain his sanity. The

act of 1897 did not change the law in this respect, but merely provided — or attempted to provide — a definite mode of procedure to ascertain whether the convict has become insane *after conviction.* He comes into court with no presumption in his favor, and with the solemn judgment of a court confronting him to the effect that he was sane at the time of his conviction.   It is therefore incumbent upon him to carry' every burden imposed upon him by the law, among which, indubitably, is the necessity to prove that his alleged insanity has come about since his conviction.   How is it legally . possible for him to get into court on such an issue unless the necessary allegations are contained in such pleadings as the law requires of him ?

In the present case, it affirmatively appears from the affidavit on which the proceeding was based that the physician who made the affidavit had examined the convict both before and after his conviction, but he is significantly silent as to when, in his opinion, the convict became insane.   The argument of the majority in the *Sears* case, that, because the conviction legally established the sanity of the convict at that time, an affidavit, made subsequently to the conviction, that the convict is insane at that time, necessarily means that he became insane after the conviction, does not seem to me to be sound; especially in a case like the present.   It is true that the conviction legally settled the mental status of the convict at that time; but it did not settle the professional opinion of the medical gentleman who examined him previously to his trial; and the affidavit of a physician that he has examined a convict both before and since his conviction, and that from the examination last made he believes him to be "now insane," does not, in my opinion, mean that the insanity has arisen since the conviction or since the first examination, and consequently I do not think it is sufficient in law to be the basis of a proceeding of this nature.   It is a matter of record in this court that Lee was tried on the charge of murder in Fulton superior court; that he filed a special plea setting up insanity at the time of the trial; that the issue raised by that plea was decided against him; that he then went to trial on the merits of the indictment, pleading insanity at the time of the commission of the crime; and that he was convicted of murder and sentenced to death.   The case was brought to this court, and the judgment of the court below was affirmed.   *Lee* v. *State,* 116 *Ga.* 563.

He now comes into court with the affidavit of a physician that he "is now insane," and asks that his mental status be again adjudicated.     To permit astute counsel, armed with a doctor and such an affidavit as this, to come into court and once more go over the never-subsiding question of his client's sanity or insanity, is, in my opinion, to defeat the plain intent of the law that the death sentence should be executed without further delay unless it should appear that the convict has become insane since his conviction.

FISH, J.     I concur in the foregoing views expressed by Mr. Justice Candler.