(No. 14108.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EUGENE GEARY, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*question whether defendant has become insane after sentence must be tried by jury.* The provision of section 13 of division 2 of the Criminal Code is mandatory that the court shall impanel a jury to determine whether a defendant has become insane after verdict, or after judgment, or after sentence and before execution of the sentence, and such question, when properly presented, cannot legally be tried by the court, alone.

2. SAME—*when question of insanity of defendant after sentence is properly presented.* The question whether a defendant has become insane after judgment and sentence is properly presented by a petition which alleges that the defendant has so become insane and which is supported by affidavits detailing the facts relied upon to establish such insanity.

3. SAME—*what evidence is admissible to determine whether defendant has become insane after sentence.* On a trial of the question whether a defendant under sentence of death has become insane after judgment and sentence, both the defendant and the State may introduce all competent evidence on the issue presented, and each side should be allowed the right of cross-examination and the use of expert witnesses, who should be examined in a proper way by hypothetical questions and who may detail any relevant facts in their knowledge, but they should not be allowed to usurp the function of the jury.

4. SAME—*what questions are before the jury in determining whether defendant has become insane after sentence.* In a proceeding under section 13 of division 2 of the Criminal Code to determine whether a defendant has become insane after he has been sentenced, the only questions for the jury are whether the defendant has become lunatic or insane since the entry of the original judgment and sentence, and whether he is lunatic or insane at the time of the impaneling of the jury, within the meaning of said section of the statute, and no question can be raised as to the insanity of the defendant at the time the crime was committed or as to his guilt or innocence.

5. SAME—*when a defendant will not be regarded as insane.* After sentence a defendant will not be regarded as insane if he has sufficient intelligence to understand the nature of the proceeding to determine his sanity, what he was tried for originally, what

punishment awaits him and what is its purpose, and has sufficient mind to know any facts which might exist which would make his punishment unjust or unlawful and sufficient intelligence to convey such information to his attorney or the court, as the usual test of sanity to determine responsibility for crime does not apply.

6. SAME—*question whether defendant has become insane after sentence must be tried as ordinary civil case.* The trial of the question whether or not a defendant has become insane after sentence must be conducted as any ordinary trial before a jury in civil cases where any question of insanity or unsoundness of mind is to be inquired into, and each·side is entitled to the same number of peremptory challenges in selecting the jury as in civil cases; and the jury, after being properly instructed by written instructions and after considering all the competent evidence, should make up their verdict and return it into court in the ordinary way.

7. SAME—*court should order stay of execution pending determination of defendant's sanity.* Pending the determination of the question whether a defendant under sentence of death has become insane after sentence, the court should, under section 1 of division 14 of the Criminal Code, enter an order staying the execution to a day certain, and has power to make any further prolongation of the time of execution which is necessary to enable it to complete the trial.

8. SAME—*what judgment shall be entered where the jury finds that defendant is sane.* If the jury, in a proceeding to determine whether a defendant under sentence of death has become insane after judgment and sentence, finds that the defendant is not insane or lunatic, the court shall at once enter the verdict and judgment thereon and definitely fix the date for the execution of the defendant on any week-day thereafter, sufficiently far ahead to give the sheriff time to prepare for the execution.

9. SAME—*procedure where jury finds defendant has become insane after sentence.* In a proceeding to determine whether a defendant under sentence of death has become insane after judgment and sentence, if the jury finds that the defendant has so become and is insane, the court shall enter an order staying the execution until defendant's recovery, and shall enter a further order that the defendant be confined in some hospital for the insane until his recovery, when the date of his execution may then be definitely fixed.

10. SAME—*no review can be had of a proceeding to determine whether defendant has become insane after sentence.* The statute provides only for one trial to determine whether a defendant has become insane after his conviction and sentence, and no review can be had, either by appeal or writ of error, from the final order and judgment of the court in such proceeding.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. CHARLES A. MACDONALD, Judge, presiding.

THOMAS D. NASH, (THOMAS E. SWANSON, and MICHAEL J. AHERN, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, STEPHEN A. MALATO, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error (hereafter referred to as defendant) was tried and convicted on an indictment charging him with the murder of one Harry Reckas, and the jury by their verdict fixed his punishment at death. Judgment was entered on the verdict November 10, 1920, in which the date of the execution was fixed for December 17, 1920, in accordance with the provisions of our statute. A writ of error was allowed for the review of the judgment by this court at our February term, 1921. The writ of error was made a *supersedeas,* and all further proceedings on the judgment were stayed until the further order of this court. At the April term, 1921, the decision of this court was filed affirming the judgment of the criminal court, and the clerk of this court was directed to enter an order fixing the period between nine o'clock in the forenoon and four o'clock in the afternoon of June 17, 1921, as the time when the original sentence of death entered in the criminal court should be executed. (*People* v. *Geary,* 297 Ill. 608.) A rehearing was denied June 9, 1921, of the term now in session.

On May 19 of the May term, 1921, of the said criminal court, Thomas D. Nash, who has been acting as one of the attorneys for the defendant since his indictment, filed a petition in said court, verified by his affidavit, representing therein, in substance, that since said judgment and sentence defendant has been and is now confined in the common jail of said county of Cook, and that since the entry

of the judgment and sentence aforesaid against him in that court he has become and is now insane and is afflicted with paresis and is incapable of realizing or comprehending the fact that he is under sentence of death and must suffer the same unless he shall show some good and sufficient cause why the penalty ought to be postponed or not executed. The petitioner prayed on behalf of the defendant that the court order a jury to be impaneled to try the question as to his sanity or insanity at the time of impaneling the jury and that a day be set for the hearing. He also prayed that an order be entered directing the sheriff to stay execution of the death sentence until such time as the jury so impaneled should return its verdict and that the jailer of the county permit examination of defendant by physicians on request of petitioner, so that the evidence may be offered to the jury by which the truth with reference to his alleged insanity may be determined. This petition was supported by sworn statements of facts therein made by petitioner, and also by another affidavit of August F. Bahr, one of the guards at said jail, stating many of the same facts alleged in the affidavit of petitioner and other facts within his knowledge tending to show that since said judgment and sentence the defendant is insane and has delusions that he is a victim of persecution by his guards and other persons, who are punishing and torturing him to prevent him from sleeping and resting and are fouling and poisoning his food; that as a result of his insanity and delusions he refuses to eat sufficient food and has fallen off many pounds in weight and has become violent and dangerous, and is growing more so day by day, so that the guards are required to keep him confined and locked up in his cell to prevent him from doing violence to others.

Upon the filing of the petition and affidavits aforesaid three alienists were appointed by the court, by agreement of counsel, who were to, and did, examine defendant for the purpose of determining if he were sane or insane and

to testify to their findings on the trial of the issues to be determined, and the hearing was set for May 31, 1921. On that day the defendant, with his counsel, and also the State's attorney, appeared in court for the trial, and the court refused to grant the request of the defendant's counsel to enter any order to prolong the time for the execution of the death sentence or to impanel a jury to try the issue as to the defendant's insanity, but over the objections of the defendant's counsel proceeded to examine the said three witnesses with reference to their competency to testify as alienists by interrogatories propounded to them by himself, and also to examine them with reference to their opinions as to defendant's insanity based upon their examinations of him. Only two questions were propounded by the court to the alienists outside of other questions by him to them touching the matter of their competency to testify as alienists. Those two questions were propounded to each of the three alienists, and are in their order as follows:

"Question 1.—In your opinion, Doctor, did Eugene Geary at the time of your examination of him have sufficient intelligence to understand that he had been indicted, charged with the murder of Harry Reckas, that he was tried in the criminal court of this county on such charge, that he was convicted and sentenced to be hanged therefor, and that said sentence of death is about to be carried into execution?

"Question 2.—In your opinion, Doctor, did Eugene Geary at the time of your examination of him have sufficient understanding to know any facts that might exist which, if known, would exonerate him or mitigate his punishment, and the intelligence requisite to convey such information, if any, to his attorneys or to the court?"

The answer to each of those questions was the same by each and every one of the alienists, to-wit, "He did." Counsel for the defendant objected to the questions, both as to form and substance, and for the further reason that they

did not embody the correct legal test of insanity and were constructed on lines too narrow for this inquiry, and also upon the further ground that the inquiry or trial was before the court and not by a jury, as provided by the statute. The court in each instance overruled the objections. At the conclusion of the examination counsel for defendant again moved the court that a jury be impaneled for the purpose of determining the sanity or insanity of the defendant, but the motion was denied, and the court also denied the defendant's counsel the right to cross-examine the witnesses, the court stating that the examination was one conducted by the court; that the investigation had been made and that it satisfied the court that the petition should be denied; and the court entered judgment dismissing the petition and striking the affidavit filed in support thereof from the record, to which action of the court exceptions were taken and are preserved by the bill of exceptions.

On June 7, 1921, counsel for defendant filed in this court the record of said final order and judgment in this cause refusing to prolong the time of the execution of the original judgment and sentence and to impanel a jury to try the question whether or not the accused has become insane or lunatic since the judgment. A writ of error has been granted, and the same was made a *supersedeas* by this court.

Section 13 of division 2 (paragraph 285) of our Criminal Code (Hurd's Stat. 1917, p. 1016,) provides as follows: "A person that becomes lunatic or insane after the commission of a crime or misdemeanor shall not be tried for the offense during the continuance of the lunacy or insanity. If, after the verdict of guilty, and before judgment pronounced, such person become lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. And if, after judgment and before execution of the sentence, such person become lunatic or insane, then in case the punishment be capital, the execution thereof shall

298–16

be stayed until the recovery of said person from the insanity or lunacy.  In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic."

The contention of defendant's counsel that under the provisions of the foregoing statute he was entitled to a trial by a jury of the question whether or not he had become insane or lunatic after the original sentence of death had been entered against him is clearly right.  The statute is plain and mandatory that it is the duty of the court in all the cases in said section mentioned to impanel a jury to try "the question whether the accused be, at the time of impaneling, insane or lunatic."  The question of such insanity was raised, and properly so, by the petition, in which it was alleged that the defendant had become insane, as aforesaid, since judgment and sentence, as it was supported by the affidavits of two persons detailing the facts upon which they based their judgment as to such insanity.  The court treated the question as properly raised before him, and having done so could only try it legally in the manner provided by statute.  In the absence of a statute requiring a jury trial it has been the practice of a number of courts of this country to try the question with or without a jury, and where a doubt has arisen as to a defendant's sanity, even in the absence of a statute, it has been regarded as the better and more satisfactory method to impanel a 'jury to try the issue.  Under our said statute a jury trial in such cases therein mentioned is imperative, and such question, when so raised, cannot be legally tried otherwise.  Other courts have made similar holdings on statutes providing for jury trials in such cases. *State of Ohio* v. *Roselot,* 69 Ohio St. 91; *Sears* v. *State,* 112 Ga. 382; *State* v. *Helm,* 69 Ark. 167; *Holland* v. *State,* 52 Tex. Crim. 160; *Ex parte Maass,* 10 Okla. 302; *People* v. *West,* 25 Cal. App. 369.

The case of *Bulger* v. *People,* 61 Col. 187, is the only case we have found that holds that a statute similar to our

own is to be construed as not mandatory in the matter of requiring that such a question as now before us, when raised, shall be tried by the court and a jury. There is a very vigorous dissent in that case by two of the judges of that court, and after thoroughly considering the court's reasoning for the conclusion there reached in the construction of a statute very similar to our own, we are unwilling to follow the same in the construction of our own statute when to do so means the nullifying of the positive provision of a statute that absolutely and unequivocally provides that the trial shall be by a jury impaneled by the court.

Our own statute contemplates that the trial of any one of the three questions therein mentioned shall not only be by a jury, but that both the defendant and the State shall be permitted to introduce all competent and legitimate evidence that they may have bearing upon the single and only question to be tried in the case, and that the verdict of the jury shall be based only upon the facts that are properly provable in the case. Each side is entitled to the right of cross-examination, and is also entitled to the same number of peremptory challenges in selecting the jury as in civil cases. In this case the only questions for trial are, Has the defendant become lunatic or insane since the entry of the original judgment and sentence in the criminal court? And was he lunatic or insane at the time of the impaneling of the jury, within the meaning of said section of the statute? There can arise on the trial no question as to the sanity or insanity of the defendant at the time he committed the crime for which he stands convicted, neither can there be any question raised as to his guilt or innocence of the crime charged in the indictment. Those questions were all settled upon the former trial and cannot again arise, and ought not to be referred to in the trial of the questions now sought to be tried. The question of the insanity of the defendant at the time he committed the crime has been settled by the verdict of the jury, and the presumption now is that he is

sane. The burden of proof upon the question now sought
to be tried is upon him, and he is required, under the law,
to establish his insanity by the preponderance of the evi-
dence. We think this ought to be so because of the fact
that the question of his sanity at the time of his crime and
of his guilt has been conclusively settled by the jury in the
trial of the issues in the criminal case. This presumption
is a continuing one, and the question now to be tried is col-
lateral to the main issue with reference to his sanity and
his guilt, which have been settled heretofore against him.

It is apparent from what we have already said and held
in this case that the judgment of the criminal court refusing
to impanel a jury and try the collateral question of defend-
ant's insanity must be reversed and the cause remanded for
a jury trial, as provided by the statute. Inasmuch as the
question to be tried by the lower court upon remandment in
no way involves the question of the guilt or innocence of
the defendant, and as the proceeding is wholly statutory and
no appeal is provided by statute, and as no appeal lies for
review of the final judgment which shall be entered and
it cannot be reviewed by writ of error, we conclude that
public interest requires that we further discuss the nature
of the questions that are to be decided under said para-
graph 285 of the Criminal Code and the proper procedure
for the disposing of the same. We think it has already
been made sufficiently clear that the question to be tried by
the court and jury in this case is not the question whether
the defendant is sane or insane, in the sense of being re-
sponsible for crime, but the questions, as already indicated,
are, is he or was he insane or lunatic at the time of the
impaneling of the jury, within the meaning of said para-
graph 285, and has such lunacy or insanity originated since
November 10, 1920, the date on which his original judg-
ment of conviction was entered?

One of the important questions to be determined is as
to the test on the question whether or not the defendant

is to be considered as insane within the meaning of said paragraph of the statute. The same terms are used in all three of the said provisions of said paragraph,—lunatic and insane. The same terms are also used in paragraph 284, just preceding said paragraph 285 of the Criminal Code. When an accused is put on trial for a crime or misdemeanor, the correct test as to insanity is whether or not the defendant is capable of knowing right from wrong as to the particular act in question, and is capable of exercising the power of choosing either to do or not to do the act and of governing his conduct in accordance with such choice. (*People* v. *Lowhone*, 292 Ill. 32.) It is very clear that this test is not applicable to any one of the three instances provided for in said paragraph 285. Where the claim is that the defendant has become lunatic or insane after the commission of a crime and before he is tried for the same, he is not to be considered as lunatic or insane, when that question is to be decided, if he is capable of understanding the nature and object of the proceedings against him, and if he rightly comprehends his own condition in reference to such proceedings and has sufficient mind to conduct his defense in a rational or reasonable manner, although upon some other subjects his mind may be deranged or unsound. (*Freeman* v. *People,* 4 Denio, 9.) When one about to be executed is to be considered as insane or lunatic is not so well established by the authorities, but we think it is clear that within the meaning of our statute the defendant is to be regarded as sane, and not insane or lunatic, when he has sufficient intelligence to understand the nature of the proceedings against him, what he was tried for originally, the purpose of his punishment, the impending fate which awaits him, and a sufficient mind to know any facts which might exist which would make his punishment unjust or unlawful, and sufficient of intelligence to convey such information to his attorney or the court. When he has not such intelligence and mental ability he is to be regarded as in-

sane or lunatic by the verdict of the jury, if so found, and his execution stayed or prolonged.

The jury should make their finding from facts and circumstances properly proved on the trial, and expert witnesses should be examined in a proper way by making answers to hypothetical questions and by detailing any facts that they may know tending to show the insanity or lunacy of the defendant but should not be allowed to invade the province of the jury by deciding the very questions that the jury are required to pass on, as the three alienists were allowed to do in answering the two questions propounded to them by the court. The trial of the question or questions in this case is to be conducted as any ordinary trial before a jury in civil cases, where any question of insanity or unsoundness of mind is to be inquired into and all proper and competent evidence be submitted to the jury. The defendant has a right to cross-examine the witnesses, and the jury, after being properly instructed by the court by written instructions, after considering all the evidence in the case properly bearing on the issues, should make up their verdict and return it into court in the ordinary way.

When the question of the insanity or lunacy of one about to be executed has been properly raised, as in this case, by the filing of a petition supported by affidavit, and it becomes the duty of the court to impanel a jury to try the question of insanity or lunacy, the court should at once enter an order prolonging or staying the execution of the defendant until the conclusion of the proceedings and trial to determine whether or not the defendant is insane or lunatic. The trial court has authority to enter such order under section 1 of division 14 of the Criminal Code, which provides, in substance, that for good cause the court or Governor may prolong the time for the execution. The necessity of the court's entering into such a trial to determine the question of insanity or lunacy of the defendant is good cause for such an order. After the trial has ended and the

jury make their finding that the defendant is not insane or lunatic the court should at once enter the verdict and judgment thereon and immediately thereafter definitely fix the date for the execution of the defendant, which may be set on any day thereafter except on a Sunday, the time of such sentence to be fixed just sufficiently far ahead to give the sheriff of the county sufficient time to properly prepare for the execution of the defendant. If the finding of the jury shall be that the defendant, at the time of impaneling the jury, is insane or lunatic and has so become insane after judgment, the court shall thereupon enter an order on such verdict staying the execution of the defendant until his recovery from such insanity or lunacy, and pending such lunacy shall enter a further order that he be confined in some hospital for the insane until his recovery from such insanity or lunacy, at which latter time the date of his execution may be definitely fixed by the court in the manner aforesaid.

On June 14, 1921, a motion was made by defendant's counsel to vacate the order fixing date of execution or stay execution until the further order of the court. It being then apparent to the court that there would not be sufficient time between that date and June 17, 1921,—the date fixed by this court for the execution of the defendant,—this court changed the date of the execution of the defendant from June 17, 1921, to July 22, 1921, so that the criminal court of Cook county might have sufficient time to impanel a jury and try the question of the insanity of the defendant. If it should appear to the lower court that the date last fixed by this court for such execution does not give sufficient time for the criminal court to impanel a jury and try the said question of insanity, the criminal court has sufficient power and authority, under the statute already cited, to make any further prolongation of the time of execution to enable it to complete the trial for insanity and to make whatever order is necessary or expedient. The statute only provides for one trial to determine such insanity or lunacy of the

defendant, and no review can be had either by appeal or writ of error from the final order and judgment of the court. *People* v. *Bechtel*, 297 Ill. 312.

It is further suggested that the defendant's attorneys should be accorded all reasonable opportunities by the court to have the defendant examined by alienists, if that shall appear to be necessary or proper for his counsel to sufficiently prepare his case for trial.

The order and judgment of the criminal court of Cook county are reversed and the cause remanded, with directions to that court to impanel a jury and try the question of insanity or lunacy of the defendant in accordance with the opinion of this court.

*Reversed and remanded, with directions.*

---

(No. 13580.—Appellate Court reversed; circuit court affirmed.)
JOE CATELLO, Appellant, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellee.

*Opinion filed June 22, 1921.*