(No. 20970.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN PRESTON, Plaintiff in Error.

*Opinion filed August 15, 1931.*

EUGENE L. McGARRY, guardian *ad litem,* for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, C. W. REED, State's Attorney, RUSSELL W. KEENEY, and WILLIAM E. HOOPER, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

John Preston was indicted in the circuit court of Du-Page county for the murder of Agnes Johnston. A jury found him guilty of the charge and fixed his punishment at death. Motions for a new trial and in arrest of judgment were made and denied and judgment was rendered on the verdict. Preston prosecuted a writ of error from this court, and after a review of the record, the judgment was affirmed and December 12, 1930, was fixed as the day on which he should be executed. *People* v. *Preston,* 341 Ill. 407.

On December 11, 1930, Mary Preston, the prisoner's mother, filed a verified petition in the circuit court of Du-Page county, alleging that since the rendition of the original judgment, her son had become insane and praying that a jury might be impaneled to determine the question of his sanity. The circuit court thereupon entered an order staying Preston's execution and fixing December 18, 1930, as the time for the hearing on the petition. On that day the court appointed Eugene L. McGarry, guardian *ad litem* for Preston and postponed the hearing until January 2, 1931. The hearing on the petition began at the appointed time and on January 5, 1931, the jury returned a verdict finding that Preston had become lunatic or insane since the entry of the original judgment and sentence of death and that he was lunatic or insane at the time of the impaneling of

the jury. The State's attorney made a motion for a new trial and on January 16, 1931, the motion was granted by the court on the ground that the verdict was manifestly and palpably against the weight of the evidence. The second trial followed on April 13, 1931, the jury consisting of seven men and five women, and three days later they returned their verdict finding that Preston had not become insane since the rendition of the original judgment and that he was not insane at the time the jury were impaneled. A motion for a new trial was made in Preston's behalf by his guardian *ad litem*. During the pendency of this motion, the statute which purported to authorize the selection of women as jurors was declared unconstitutional in *People* v. *Barnett*, 344 Ill. 62, and accordingly, the circuit court, on May 2, 1931, granted the motion for a new trial. The third trial followed, and the jury, composed wholly of men, on May 21, 1931, found as the second jury had and returned the same verdict. Motions for a new trial and in arrest of judgment were successively made by the guardian *ad litem* and denied by the circuit court, and on May 23, 1931, judgment was rendered on the verdict and the original sentence of death was ordered to be executed. The guardian *ad litem*, in Preston's behalf, applied to this court for a writ of error, the writ was issued and made a *supersedeas* and the record of the proceedings upon Mary Preston's petition, exclusive of the evidence, is here for review.

The guardian *ad litem* assigns three errors upon the record. In his argument they are reduced to the single contention that the circuit court erred in setting aside the jury's verdict finding that Preston had become insane since the original sentence of death was pronounced and that he was insane at the time the jury were impaneled. This contention is based upon section 13 of the second division of the Criminal Code (Cahill's Stat. 1929, p. 986; Smith's Stat. 1929, p. 1049) which provides: "A person that becomes lunatic or insane after the commission of a crime

or misdemeanor shall not be tried for the offense during the continuance of the lunacy or insanity. If, after the verdict of guilty, and before judgment pronounced, such person become lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. And if, after judgment and before execution of the sentence, such person become lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of said person from the insanity or lunacy. In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic."

At common law, criminal proceedings against a person who became insane after he had committed a crime were arrested during the period of his mental incompetency. Holdsworth's statement upon the subject, (8 History of English Law, p. 439) is as follows: "No felony or murder," says Coke, "can be committed without a felonious intent and purpose * * *; but *furiosus non intelligit quid agit, et animo et ratione caret, et non multum distat a brutis,* as Bracton saith, and therefore he cannot have a felonious intent." For this reason insanity was a bar either to the institution or the continuance of criminal proceedings. We have seen that it was settled in the mediæval period that madness, if it existed when the crime was committed, negatived liability. It was further settled in this period that, if a person of sound mind commits a crime and becomes mad before his arraignment, he cannot be arraigned; "and if such person after his plea and before his trial, become of non-sane memory, he shall not be tried; or, if after trial he become of non-sane memory, he shall not receive judgment; or, if after judgment he become of non-sane memory, his execution shall be spared; for were he of sound memory, he might allege somewhat in stay of judgment or execution." Blackstone in his Commentaries (book 4, p. 24) wrote to the same effect: "Also, if a

man in his sound memory commits a capital offense, and before arraignment for it he becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defense? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if after judgment he becomes of non-sane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution."

The charge is made in the present case that the prisoner became insane after conviction and judgment. The common law, in such a situation, prescribed no particular method for determining the prisoner's sanity or insanity. Upon this subject Blackstone (4 Com. pp. 395, 396) said: "Another cause of regular reprieve is, if the offender becomes *non compos* between the judgment and the award of execution; for regularly, as was formerly observed, though a man be *compos* when he commits a capital crime, yet if he becomes *non compos* after, he shall not be indicted; if after indictment, he shall not be convicted; if after conviction, he shall not receive judgment; if after judgment, he shall not be ordered for execution; for *'furiosus solo furore punitur,'* and the law knows not but he might have offered some reason, if in his senses, to have stayed these respective proceedings. It is therefore an invariable rule, when any time intervenes between the attainder and the award of execution, to demand of the prisoner what he hath to allege why execution should not be awarded against him; and if he appears to be insane, the judge in his discretion may and ought to reprieve him."

An inquisition to determine the mental condition of a person convicted of crime and under sentence of death, who, it was alleged, had become insane since the rendition of

judgment, was, at common law, under the control of the trial court (4 Blackstone's Com. p. 395; *Nobles* v. *Georgia,* 168 U. S. 398). The prisoner's guilt had been finally established prior to such an application and the plea, based on his alleged insanity subsequently contracted, was an appeal to the humanity of the court to postpone his execution. (*Laros* v. *Commonwealth,* 84 Pa. St. 200). The trial court alone decided when such an inquisition was warranted. If the decision was in the affirmative, the court was not obliged to summon, and the prisoner was not, as a matter of right, entitled to, a jury, but the court took such action as, in its discretion, it deemed best. (*Nobles* v. *Georgia, supra*). The court might conduct the inquisition itself or supervise the calling and return of a jury. (*In re Herron,* 77 N. J. L. 315, 318). If the judgment rendered upon the finding established the prisoner's insanity, it afforded him immunity from the punishment adjudged until his restoration to that degree of sanity which was not inconsistent with his execution. *In re Herron,* 77 N. J. L. 315, 318.

It will be observed that section 13 of division 2 of our Criminal Code departs from the common law only in the concluding sentence of the section which provides that, "In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic." The discretion vested in the trial judge by the common law with respect to the manner of conducting the proceeding is withdrawn to the extent that the impaneling of a jury is made mandatory. The particular statute makes no other change, and subject to this modification and in the absence of other applicable statutes, the proceeding must necessarily be conducted according to the course of the common law. All courts of general common law jurisdiction have inherent power to grant new trials. (*Rex* v. *Gough,* 2 Dougl. K. B. 791; *Rex* v. *Holt,* 5 T. R. 436; *Rex* v. *Atkinson,* 5 id. 437;

*Mills* v. *Scott,* 99 U. S. 25; *Hensley* v. *Davidson Bros. Co.*
135 Iowa, 106; *Walker* v. *Bradford,* 117 Me. 147; *Ellis* v.
*Ginsburg,* 163 Mass. 143; *Forbes* v. *New York Life Ins. Co.*
178 id. 139; *Ft. Wayne & B. I. R. Co.* v. *Wayne Circuit
Judge,* 110 Mich. 173; *Bank of Willmar* v. *Lawler,* 78
Minn. 135; *DeVall* v. *DeVall,* 60 Ore. 493; 40 L. R. A.
(n. s.) 291; Ann. Cas. 1914A, 409; *Nevitt* v. *Wilson,* 116
Tex. 29). Section 12 of article 6 of the constitution of 1870
vests in the circuit courts of this State original jurisdiction
of all causes in law and equity and those courts are there-
fore courts of general common law jurisdiction.

The trial of the issues whether a person convicted of
murder and under sentence of death has since the judgment
was rendered, become insane, and at the time of impaneling
the jury, is insane, should be conducted, this court declared
in *People* v. *Geary,* 298 Ill. 236, as any ordinary trial be-
fore a jury in a civil case in which a person's insanity is
charged and made the subject of inquiry. Where the issue
of insanity is raised in the course of an action at law in a
court of general common law jurisdiction, the jury's verdict
is returned subject to the court's inherent power to set it
aside and to order another trial. To the same effect is the
Practice act which governs the method of procedure in civil
cases on the law side in trial courts. (*People* v. *Murphy,*
296 Ill. 532). Section 77 of that act expressly provides
that after the return of the jury's verdict, either party may
make a motion for a new trial or in arrest of judgment
and that neither party shall be granted more than two new
trials upon the same grounds in the same cause. It ap-
pears therefore that, in a civil case presenting the issue of
insanity, the circuit court has the power to set aside the
jury's verdict and to grant a new trial.

To sustain his contention, however, the plaintiff in error
invokes the statement in *People* v. *Geary,* 298 Ill. 236, at
page 247, that, in a case of this character, "The statute only
provides for one trial to determine such insanity or lunacy

of the defendant." The question whether a new trial could be granted was not involved in *People* v. *Geary*, and hence an expression upon the subject was unnecessary. The statute, section 13 of division 2 of the Criminal Code, contains no such limitation. It provides that "In all of these cases, it shall be the duty of the court to impanel a jury to try the question whether the accused be, at the time of impaneling, insane or lunatic." An affirmative statutory declaration that an issue of fact shall be determined by a jury or that a party shall have the right to a trial by jury is not a denial of the power of a court of general jurisdiction to set the jury's verdict aside and to grant a new trial. Our statutes afford numerous illustrations of the validity of this statement, but reference to a few will be sufficient. Section 7 of the Divorce act provides that when the defendant appears and denies the charges in the complainant's bill, either party shall have the right to have the cause tried by a jury. Section 33 of the Dower act authorizes the court, upon a petition for the recovery and assignment of dower, to direct the issues to be tried by a jury, as in other cases in equity. Under section 11 of the Forcible Entry and Detainer act, either party may demand trial by a jury. Section 7 of the Wills act provides that upon a bill to contest the validity of a will, an issue at law shall be made up whether the writing produced be the will of the testator and that the issue shall be tried by a jury in the circuit court. Each of these statutes contains an affirmative provision for a jury trial, but none expressly authorizes a second trial. The power of the trial court, in these cases, to set aside the jury's verdict and to order a new trial is not denied and that power often has been exercised. The necessity for the exercise of this superintending power to correct prejudicial errors, to set aside verdicts contrary to the weight of the evidence and to promote impartial justice under the law has been established by long experience. It would indeed hamper the administration of justice if the verdict of

a jury, however obtained or manifestly unjustified, finally concluded the rights of the parties. No such intention can be attributed to the legislature in the enactment of the provision making mandatory the impaneling of a jury to try the issue whether a person under sentence of death has, since judgment was rendered, become insane.

The statement in *People* v. *Geary, supra,* that the statute in question only provides for one trial has not been followed by this court. In *People* v. *Scott,* 326 Ill. 327, it appeared that Russell T. Scott had been convicted of murder and sentenced to death; that pursuant to a jury's verdict under section 13 of division 2 of the Criminal Code, he was committed to an asylum for the criminal insane; that subsequently, upon the petition of the prosecuting officers alleging that Scott had recovered his sanity, he was brought before the court which had committed him to the asylum and that proceedings followed which resulted in a jury's verdict finding him sane and the court's judgment on the verdict fixing the date of his execution. On a writ of error, this court reversed the judgment and remanded the cause, stating in the course of its opinion, at page 351, that no judgment "should have been entered on the verdict of the jury in this case, but the court should have granted the motion for a new trial because of the errors that we have already indicated." The essential thing in the right of trial by jury, as this court said in *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609, is the right to have the facts in controversy determined under the direction and superintendence of a judge by twelve impartial jurors possessing the qualifications and selected in the manner required by law, whose verdict must be unanimous and shall be conclusive, subject to the right of the judge, except on acquittal of a criminal charge, to set the verdict aside if in his opinion it is against the law or the evidence and to grant a new trial.

The judgment of the circuit court of DuPage county is affirmed. The clerk of this court is directed to enter an

20

order fixing October 9, 1931, as the time when the original sentence of death entered in the circuit court of DuPage county shall be executed. A certified copy of that order will be furnished by the clerk of this court to the warden of the Illinois State Penitentiary at Joliet.

*Judgment affirmed.*