No. 16,203.

BERGER *v.* THE PEOPLE.
(231 P. [2d] 799)

Decided April 9, 1951.   Rehearing denied May 14, 1951.

Mr. ISAAC MELLMAN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. NORMAN H. COMSTOCK, As-
sistant, Mr. JOHN W. METZGER, Attorney General, Mr.
JOSEPH E. NEWMAN, Deputy, Mr. RAYMOND B. DANKS,
Assistant, for the people.

403

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

John J. Berger, Jr., was convicted June 30, 1948, of the crime of murder, and death penalty imposed September 24, 1948. Thereafter, September 18, 1950, the sentence was affirmed in this court (122 Colo. 367, 224 P. [2d] 228), and date of execution fixed for December 16, 1950. On December 12, 1950, Berger filed a motion in the trial court reciting the above facts, and also:

"That the undersigned [his attorney] has seen the defendant at the state penitentiary at Canon City some time during the month of May, 1950 and that at said time the defendant appeared to have become a lunatic or insane and appeared not to be mentally competent.

"That since said date the undersigned has made inquiry and is of the opinion and belief that many of the guards and keepers at the state penitentiary at Canon City are of the opinion that the defendant is a lunatic or insane at this time and not mentally competent.

"That there is attached hereto a letter from Rev. Justin McKernan, O.S.B., Catholic Chaplain at the Penitentiary at Canon City, which letter is marked 'Exhibit A' and by this reference herein incorporated and which indicates that in the opinion of said Chaplain who has seen the defendant at least once a week for a long time that the defendant is not mentally competent, and has since his conviction become insane.

"That pursuant to the provisions of Chapter 48, Section 7, C.S.A. 1935, the undersigned, as attorney for the defendant, respectfully petitions that the Court by personal examination, either public or private, determine the sanity or insanity of the defendant at this time or that this Court appoint a commission to determine the report as to the sanity or insanity of the defendant to the end that a final determination be had as to the sanity or insanity of the defendant at this time.

"That an order be entered staying the execution of the defendant pursuant to the verdict of the jury and judgment heretofore entered until such time as the Court shall have had an opportunity by personal examination or by report of a commission to be appointed to determine the sanity or insanity of the defendant.

"Wherefore, defendant, by his attorney, respectfully prays that this Honorable Court, by personal examination, determine the sanity or insanity of the defendant, or that this Court appoint a commission to determine such sanity or insanity and report to the Court, and that an order be entered that pending such determination that the execution of the defendant be stayed until further order of this Court, and that defendant have such other and further relief as to the Court may seem meet and proper."

The letter to which reference is made in the above motion, omitting formal parts, is as follows:

"Your kind letter pertaining to John Berger was received this morning. I am pleased to hear you have taken such interest in his case and wish you the best of luck in whatever you can do for him.

"It is one of my duties to visit the condemned men behind the screen, especially where they are member of our church. I have been visiting John on the average of once a week for a long time now. Just yesterday I called on him and had a short visit with him.

"From the very first I have noticed John to be mentally incompetent. He does not act in the normal way. His mind seems to be miles away. When asked a question, he is liable to answer anything that comes to his mind. He oftens remarks that they want to gas him, but that does not seem to deter him in the least. He has lost all interest in things around him or those of the future. He expects to be run out of there soon so he can do extensive traveling. I do not think he is playing off insanity. He is not sane enough for that, at least that is what I think.

"Whatever you can do for John will be appreciated by his good family. If a commutation is given him, it will be necessary to keep him in cell house five as he is considered a dangerous person. I personally get along with John very well, but have to humor him along and I have never dared to cross him yet. I just do not know how he would act if I did so."

In compliance with the above motion, the trial court on December 12, 1950, appointed two psychiatrists, ordering them to examine defendant and report their findings as to his sanity or insanity to the court. Thereafter said psychiatrists so appointed, filed with the court December 14, 1950, their separate reports stating that, pursuant to court order, they had examined defendant and found him to be sane. The Court after examining these reports and the files in the case, and after consulting the warden of the Colorado State Penitentiary concerning defendant's mental condition, found "That the defendant, John J. Berger, Jr., is now sane, and accountable to the law."

Thereafter, December 15, 1950, defendant filed his petition in this court alleging in substance the circumstances set forth above and prayed that we take original jurisdiction of the case, pursuant to Rule 116, R.C.P. Colo., and that the trial court be ordered to show cause why a jury should not be impaneled to determine whether or not defendant was insane, in accordance with the provisions of Rule 106 (a) (4).

Upon consideration of defendant's petition to show cause, we ordered that execution be stayed until further order of court; that the record of the proceedings in the trial court be certified to this court; that defendant may proceed as a poor person; that the petition to show cause be filed and docketed in the above entitled cause; and that briefs be filed on behalf of defendant and the people.

Defendant, in demanding a jury trial on the issue of

insanity, relies upon section 7, chapter 48, '35 C.S.A., which provides:

"A person that becomes lunatic or insane after the commission of a crime or misdemeanor ought not to be tried for the offense during the continuance of the lunacy or insanity. If, after verdict of guilty and before judgment pronounced, such person becomes lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue, and if after judgment and before execution of the sentence, such person becomes lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of such person from the insanity or lunacy. In all these cases it shall be the duty of the court to impanel a jury to try the question whether the accused be at the time of impaneling insane or lunatic."

██ It is contended by defendant's counsel that no discretion whatever is lodged in the trial court to grant or refuse a jury trial on the insanity issue, and that the mere suggestion of insanity intervening subsequent to death sentence, vests the absolute right of jury trial in defendant under the statute.

This statute has been construed by us in *Bulger v. People*, 61 Colo. 187, 156 Pac. 800; *People ex rel. v. Eldred*, 103 Colo. 334, 86 P. (2d) 248; *Shank v. People*, 79 Colo. 576, 247 Pac. 559. We quote from the opinion in the Bulger case: "It will be observed that both the common law and the statute are specific that when a person becomes insane after conviction of a capital offense, he shall not be executed until his recovery from the lunacy, and under the statute when the fact of insanity exists a jury shall be impaneled to try the question. The statute, however, does not state in what manner the fact of insanity shall, in the first instance, be ascertained and the common law necessarily controls in that regard. Thereunder when insanity in such cases is suggested or alleged the court may determine the condition of the prisoner's mind by a personal inspection or

examination of him, either public or private; by inquiry from attending physicians, or from those around the prisoner who have means of knowledge; and if, after such investigation and inquiry, the judge has no doubt of the prisoner's sanity he is neither bound to nor should he order an inquisition. 10 Cyc. Pl. & Prac., p. 1220; *Bonds v. Tennessee, supra,* [M. & Y. 143, 17 Am. Dec. 795]; *Nobles v. State* [Georgia], [168 U. S. 398, 42 L. Ed. 515, 18 S. Ct. 87.]

"It would, therefore, seem that the sole modification of the common law by the statute is to require the court in cases where it believes that defendant is insane, or, perhaps, where it has doubt of his sanity, to impanel a jury and try the question. Buswell on Insanity, §461. * * *"

The trial court in the instant case adopted the last two of the above mentioned methods for determining the condition of defendant's mind, viz., he appointed two qualified physicians specializing in the field of psychiatry to examine defendant and report their findings to the court. In addition, he consulted the warden of the penitentiary, who, by reason of his position, is possessed of all "the means of knowledge" necessary to express a competent opinion on his prisoner's sanity. As a result of such investigation, the trial court determined, "That the defendant * * * is now sane," in which event, as said in the Bulger case, supra, "He is neither bound to nor should he order an inquisition."

The unsoundness of the position of counsel for defendant is clearly demonstrated by the opinions in *Solesbee v. Balkcom,* 339 U. S. 9, 70 Sup. Ct. 457, 94 L. Ed. 604; and *Nobles v. Georgia, supra,* cited in the Bulger case. In the latter case it was said:

"From these considerations it follows that the only question which we are called upon to determine is whether, after a regular conviction and sentence, a suggestion of a then existing insanity is made, it is necessary, in order to constitute due process of law, that the

question so presented should be tried by a jury in a judicial proceeding surrounded by all the safeguards and requirements of a common-law jury trial, and even although by the state law full and adequate administrative and *quasi* judicial process is created for the purpose of investigating the suggestion. Without analysis of the contention, it might well suffice to demonstrate its obvious unsoundness by pointing to the absurd conclusion which would result from its establishment. If it were true that at common law a suggestion of insanity after sentence, created on the part of a convict an absolute right to a trial of this issue by a judge and jury, then * * * it would be wholly at the will of a convict to suffer any punishment whatever, for the necessity of his doing so would depend solely upon his fecundity in making suggestion of insanity, to be followed by trial upon trial. * * * "

The subject here considered is thoroughly treated in an annotation in 49 A.L.R. 804, from which we quote: "It is generally recognized that to permit convicted persons to arrest the execution of the sentence imposed upon them, by demanding as a legal right an inquisition into their mental condition, would be tantamount to granting them the privilege of thwarting the administration of criminal justice for an indefinite term. Hence persons in confinement awaiting the execution of the death penalty have no legal right, except where such right is conferred by statute, to have an inquisition into their mental condition. The initiating of such a proceeding is within the discretion of the court or executive having jurisdiction in such matters."

We conclude that the trial court, in finding defendant sane and in refusing to grant a jury trial on the question of his sanity, did not exceed its jurisdiction or abuse its discretion; accordingly the rule to show cause is hereby discharged. It is further ordered that the original judgment and sentence of the trial court be executed within the week ending June 16, 1951.

Mr. Justice Moore, Mr. Justice Holland and Mr. Justice Hilliard dissent.

Mr. Justice Holland dissenting.

In a four to three decision announced April 9, 1951, this court upheld the decision of the trial court denying Berger a jury trial to determine the question of insanity after sentence of death and pending execution. In the hope that a rehearing would be granted, I had delayed voicing my dissent.

Counsel for Berger contends, rightfully, I think, that the majority opinion herein would deprive the latter of his life without due process of law contrary to section 1, Article XIV, of the Constitution of the United States, and also section 25 of Article II of the Constitution of the State of Colorado, and that this court, by its opinion misconstrued the provisions of section 7, chapter 48, '35 C.S.A. The section of the statute referred to has been on our statute books in its present form since 1861, and is as follows: "A person that becomes lunatic or insane after the commission of a crime or misdemeanor ought not to be tried for the offense during the continuance of the lunacy or insanity. If, after verdict of guilty and before judgment pronounced, such person becomes lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue, and if after judgment and before execution of the sentence, such person becomes lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of such person from the insanity or lunacy. *In all these cases it shall be the duty of the court to impanel a jury to try the question whether the accused be at the time of impaneling* insane or lunatic."

By direct adjudication, the sole question here involved has not heretofore been passed upon by this court, although the author or the majority opinion says, "This statute has been construed by us in *Bulger v. People,*

61 Colo. 187, 156 Pac. 800; *People ex rel. v. Eldred,* 103 Colo. 334, 86 P. (2d) 248; *Shank v. People,* 79 Colo. 576, 247 Pac. 559 * * *." In the Bulger case, supra, after this court had vacated an order fixing date for the execution of the defendant, it "Ordered that defendant, with all convenient speed, apply to the District Court wherein his trial was had and sentence pronounced, to have the question of his sanity determined at the time of *impaneling a jury for that purpose* in the *manner the law provides * * *."* The sanity inquisition before a jury resulted in a finding that the defendant was sane. Thereupon counsel for defendant instituted an original proceeding in this court as is stated in the opinion, "The object of which is to have us review the inquisition by means of the writ of certiorari." It further is stated in the opinion, "It is clear that the matters presented by the application and papers in case No. 4896 and in the petition for *certiorari* relate to the same alleged right of defendant, that is, to have this court review the inquisition proceedings as to his sanity, annul the verdict of the jury therein, and cause a new inquisition to be held." Further quoting from the opinion, "We do not wish to be understood as either approving or disapproving the manner in which the inquiry was carried on in the trial court. The proceedings in that regard are not, within the meaning of the law, before us and we do not deem it proper to express an opinion thereon. We are very certain, however that it was intended by the common law and the statute that a collateral hearing of this character should not be subject to review by an appellate tribunal."

I believe it has been sufficiently shown by the above quotations that the Bulger case did not determine the exact question now before us, that of whether or not, under the statute, the defendant was entitled to have the question of his sanity determined by jury. However, to fortify that statement and to uproot the long followed idea that the dictum in the Bulger case opinion does

settle the question now before us, I further quote from the Bulger opinion this most interesting statement: "If the application to this court *had failed to disclose that the trial court was convinced* that the inquiry as to the present sanity of the defendant ought to be made, we would have been confronted with an entirely different question, the proper solution of which is unnecessary to determine at the present time." (Emphasis supplied.) Does it need a further discussion to demonstrate that this court in the Bulger case was not passing upon the question of the right of defendant, under the statute, to a jury trial? When the writer of the opinion in the Bulger case indulged in an opinion on a question not before the court and not necessary to a decision of the case then before it, it was pure dictum. Of course, having been said by one in judicial authority, respect can only be given to it in the light of one judge's opinion, and, in fact, is worthy of no consideration beyond the respect due it, because it is not a determination of any question then litigated before the court. If it goes beyond the case in hand, it may be respected, but ought not to control the judgment in a subsequent case where the very point is fully presented and argued.

In the majority opinion herein reliance is had upon the dictum in the Bulger case, as is clear from the following quotation of a part of the opinion, "The statute, however, does not state in what manner the fact of insanity shall, in the first instance, be ascertained and the common law necessarily controls in that regard. Thereunder when insanity in such cases is suggested or alleged the court may determine the condition of the prisoner's mind by a personal inspection or examination of him, either public or private; by inquiry from attending physicians, or from those around the prisoner who have means of knowledge; and if, after such investigation and inquiry, the judge has no doubt of the prisoner's sanity he is neither bound to nor should he order an inquisition." "'It would, therefore, seem that the sole

modification of the common law by the statute is to require the court in cases where it believes that defendant is insane, or, perhaps, where it has doubt of his sanity, to impanel a jury and try the question.' " According to more dictum in the Bulger case, supra, and the Eldred case, supra, it is said that our statute has made no change in the common law with the exception of the last and concluding sentence of the statute. Such has been said by our court in cases not involving the question now before us, that is, the right to a jury trial on the sanity question.

It is interesting to observe that our statute, hereinbefore quoted, is an exact duplicate of an Illinois statute, and, no doubt, our statute was taken therefrom. It is proper that we attribute much weight to the decisions of the Illinois court involving this statute and the identical question now before us. This statute, and the same question now before us, was before the Illinois court in the case of *People v. Geary*, 298 Ill. 236, 131 N.E. 652, and the opinion therein on this question was, ten years later, approved by the same court in the case of *People v. Preston*, 345 Ill. 11, 177 N.E. 761. The Preston case is cited in our Eldred case, supra, in the dictum hereinbefore mentioned.

I quote at length from the early Illinois case of *People v. Geary, supra,* as follows:

"The contention of defendant's counsel *that under the provisions of the foregoing statute he was entitled to a trial by a jury of the question whether or not he had become insane or lunatic after the original sentence of death had been entered against him is clearly right.* The statute is plain and mandatory that it is the duty of the court in all the cases in said section mentioned to impanel a jury to try 'the question whether the accused be, at the time of impaneling, insane or lunatic.' The question of such insanity was raised, and properly so, by the petition, in which it was alleged that the defendant had become insane, as aforesaid, since judgment and sen-

tence, as it was supported by the affidavits of two persons detailing the facts upon which they based their judgment as to such insanity. The court treated the question as properly raised before him, and having done so could only try it legally in the manner provided by statute. In the absence of a statute requiring a jury trial, it has been the practice of a number of courts of this country to try the question with or without a jury, and where a doubt has arisen as to a defendant's sanity, even in the absence of a statute, it has been regarded as the better and more satisfactory method to impanel a jury to try the issue. *Under our said statute a jury trial* in such cases herein mentioned *is imperative,* and such question, when so raised, *cannot be legally tried otherwise.* Other courts have made similar holdings on statutes providing for jury trials in such cases. *State of Ohio v. Roselot,* 69 Ohio St. 91 [68 N.E. 825]; *Sears v. State,* 112 Ga. 382 [37 S.E. 443]; *State v. Helm,* 69 Ark. 167 [61 S.W. 915]; *Holland v. State,* 52 Tex. Cr. R. 160 [105 S.W. 812]; *Ex parte Maas,* 10 Okla. 302 [61 Pac. 1057]; *People v. West,* 25 Cal. App. 369 [143 Pac. 793].

"The case of *Bulger v. People,* 61 Colo. 187 [156 Pac. 800], is the only case we have found that holds that a statute similar to our own is to be construed as not mandatory in the matter of requiring that such a question as now before us, when raised, shall be tried by the court and a jury. There is a very vigorous dissent in that case by two of the judges of that court, and after thoroughly considering the court's reasoning for the conclusion there reached in the construction of a statute very similar to our own, we are unwilling to follow the same in the construction of our own statute when to do so means the nullifying of the positive provisions of a statute that absolutely and unequivocally provides that the trial shall be by a jury impaneled by the court."

With due respect, it is interesting to observe that Judge Duncan, the author of the opinion from which the above quotations are taken, in the Geary case,

unwittingly adopted the dictum in the Bulger case. On the question here involved, I cannot express myself with as much clarity as is to be found in the Geary opinion, supra. So much for the Bulger case, carelessly adhered to in the present majority opinion and blindly and injudiciously adopted by the trial court. I confess that I was guilty of the same error in the same kind of a request for a sanity hearing pending execution in a capital case during my experience as a trial judge. However, within an hour after my ruling, that defendant was sentenced and thereby denied a jury trial. While I was in deep trouble with my conscience concerning my ruling and my doubts as to the Bulger case, the defendant confessed that he had been malingering all the while for the purposes of a showing of insanity to escape the death penalty.

Since the author of the majority opinion also relies upon the case of *People v. Eldred, supra,* a short discussion of that case, to fully demonstrate that more dictum has stalked this court with reference to the statute here involved would seem pertinent. Mr. Justice Knous, the writer of the Eldred opinion, indulged himself freely on this question when it was not before the court at all in the case. Quoting from the opinion, "The primary question here presented for solution is whether the Fremont county court had jurisdiction to proceed with the proposed inquisition." In that case during the period after conviction and sentence by the district court and before execution of the sentence, application was made on behalf of the defendant to the county court of Fremont county for a lunacy hearing under the general lunacy statute. When the county court was about to proceed the Attorney General of Colorado filed an original proceeding for writ of prohibition in this court contending that the county court of Fremont county was without jurisdiction. Thus the matter was before this court in the Eldred case and no other question involved. The conclusion of this court then was that the county court of

Fremont county was without jurisdiction, and to the effect that an application to inquire into the sanity of a person held under sentence of death must be made to the court imposing the sentence and not be made to another court.

I happened to be a member of this court in December 1938, the date of the opinion in the Eldred case, and I again, with present condemnation of my stupidity on the Bulger case, wrote a dissenting opinion in the Eldred case upholding the defendant's right to have the inquisition applied for in the county court and in my dissenting opinion I stated, "Our statute as construed in the case of *Bulger v. People,* 61 Colo. 187, 156 Pac. 800, confers the absolute right to have the question of sanity determined. It may be determined by the court, if the court is not in doubt, otherwise an inquisition must be ordered." My mind was on the question before the court and not on the question of the right to a jury trial. However, I cannot excuse myself for not elucidating on the question.

Now to the case of *Shank v. People,* 79 Colo. 576, 247 Pac. 557, relied upon in the majority opinion. Again we find that the question of the right to a trial to a jury, as is now fully presented and argued, was not before this court under like conditions. That case was to review a death sentence pronounced on a verdict of guilty of first degree murder. The question of insanity was presented to the jury under instructions held by this court to be proper. At the time a motion for new trial was overruled, and before sentence, counsel for defendant orally objected "for the reason that he is at this time an insane person," and demanded that the question be submitted to a jury. The request was refused. This court stated that if defendant's position then was that there had been any change in his mental condition, the record does not disclose it, neither does it disclose the offer of any new evidence on the subject. This court further held that the showing was wholly insufficient to justify the inquiry; however, the case of *Bulger v. People, supra,* is

cited therein and the dictum hereinbefore set out was followed in these words of the court's opinion, "The showing was wholly insufficient to justify the inquiry, *but were it otherwise,* the application was addressed to the sound discretion of the trial court." I do not think a further discussion is necessary to show that the Shank case, supra, is in nowise decisive of the question here.

The majority opinion concludes with a citation from an annotation in 49 A.L.R. 804. This citation would be persuasive except for the clause therein which eliminates it as authority in the case before us. The clause referred to is, "except where such right is conferred by statute." This exception in the annotation is met by our statute hereinbefore set out. It is pertinent to observe that virtually all of the cases that would give any support at all to the majority opinion herein are from states that do not have a statute eliminating the common-law procedure. If our statute is subject to the interpretation given it by the majority opinion, then it is contrary to the due process provisions of the Constitution. The writer of the majority opinion in fact makes no distinction between the common-law rule and our statutory requirement. It is guileful and ingenious to say that the statute makes no change in the common law with the exception of the last sentence, that is, "In all these cases it shall be the duty of the court to impanel a jury to try the question whether the accused be at the time of impaneling insane or lunatic." If this last sentence is a change from the common law, it is an all inclusive one. The legislature had all of the different periods of occurring insanity before it and positively determined that *"In all these cases"* a jury was to be impaneled. It is absurd to say, where a life is involved, that we follow a statute up to a certain point and then that it be discarded from there on. Such a ruling abrogates and negatives the intended force of the last sentence of the statute.

If the legislature intended that this archaic phase of

the law be followed, and the question of sanity could be determined by a judge, then why did it even consider or mention a jury in connection therewith. In good reasoning, it must follow that if a judge can determine that a defendant is sane, then he undoubtedly is qualified to determine that he is insane. To require a jury, if in doubt, as is indicated in the dictum in the Bulger case, seems absurd. It still means that the judge can, by some juridic process, determine beyond all doubt that a defendant is sane, and if the same process is working, then he could find beyond doubt that he is insane, so why bother with a jury at all. By the reasoning employed in the majority opinion, the judge has the greater power, that is, he can determine that the defendant is sane and must forfeit his life, but the same judge is denied the right or power to finally determine that the defendant is insane and save his life. It is obvious that the legislature as a matter of precaution against this doubtful ability of one person, said that these questions must be determined by a jury, no doubt with some thought that twelve guesses are better than one.

The speculative line of demarcation where sanity ends and insanity begins is so faint and obscure as to cause psychiatrists, who are supposed to know all and see all, to engage in hopeless conflict in many of these litigated cases and to use words that leave the matter in utter confusion. However, in this case we have the master mind in operation that sees this invisible line so clearly that the pronouncement of sanity is made which forfeits a life. And this is not said to impugn the good faith of the trial judge involved. Knowing, as I do, the trial judge, I have every reason to assume that his conclusion was conscientiously reached, nevertheless, that does not establish its infallibility.

It is to be remembered that the question of sanity was not determined in the trial of this defendant on the question of his guilt or innocence of the criminal charge. His previous mental condition was before the court and

jury in a way that could not be questioned. He had been committed to the psychopathic hospital at least twice prior to the time of the alleged offense. However, for some reason, the plea of not guilty by reason of insanity was withdrawn at the beginning of the trial. It was my contention, expressed in a dissenting opinion in the case, that where, as under our statute, the jury is to fix the penalty in first degree murder at either life imprisonment or death, that if the jury had been properly instructed as to what they might consider in arriving at the penalty, neither the murder, nor this insanity, case might ever have been before us.

It cannot be gainsaid that here the defendant's claim of insanity is not a convenient afterthought to escape the death penalty. Who is to say that now, if defendant is given an opportunity by due process of law to present his evidence, that it might not clearly appear that the state is about to take the life of an insane person, contrary to every tenent of the law of the land. We must not overlook the fact that the trial court's decision, denying the right of jury trial, was made by a judge who was a stranger to the record in the main case.

The author of the majority opinion quotes with approval the following from a citation therein, and which seems to afford comfort to judges who want to say, "If it were true that at common law a suggestion of insanity after sentence, created on the part of a convict an absolute right to a trial of this issue by a judge and jury, then * * * it would be wholly at the will of a convict to suffer any punishment whatever, for the necessity of his doing so would depend solely upon his fecundity in making suggestion of insanity, to be followed by trial upon trial. * * *." To me, this is a startling statement when made in relation to a situation involving life or death. It is impossible for me to comprehend the mental process in arriving at such a result. My thoughts and sincere convictions were eloquently expressed by Mr. Justice Frankfurter of the United States Supreme Court

in his dissenting opinion in the case of *Solesbee v. Balkcom*, 339 U. S. 9, 70 Sup. Ct. 457, 94 L. Ed. 604, and is as follows: "It is a groundless fear to assume that it would obstruct the rigorous administration of criminal justice to allow the case to be put for a claim of insanity, however informal and expeditious the procedure for dealing with the claim. The time needed for such a fair procedure could not unreasonably delay the execution of the sentence unless in all fairness and with due respect for a basic principle in our law the execution should be delayed. The risk of an undue delay is hardly comparable to the grim risk of the barbarous execution of an insane man because of a hurried, one-sided, untested determination of the question of insanity, the answers to which are as yet so wrapped in confusion and conflict and so dependent on elucidation by more than one-sided partisanship."

Treacherous uncertainties attend all future cases involving this question if the majority opinion herein becomes the first and only authority upon the interpretation of our statute. I have hope that now and hereafter, we will have more of human justice and less of questionable legal justice.

In conformance with the views herein expressed, I think that on this application for rehearing, the majority opinion should be withdrawn and rehearing granted, or an opinion of this court delivered that will afford defendant due process of law under the Constitution and our clear, mandatory statute.

MR. JUSTICE MOORE and MR. JUSTICE HILLIARD concur in this dissent.